IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 13-00565 HG |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| ADOLFO GUZMAN, JR.,        (01) | ) | |
| JUAN AREMENTA KELLY,       (02) | ) | |
| ANTONIO PEREZ, JR.,        (03) | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**ORDER DENYING DEFENDANTS (01) ADOLF GUZMAN, JR., (02) JUAN AREMENTA KELLY, AND (03) ANTONIO PEREZ, JR.'S MOTION TO SUPPRESS (ECF No. 73)**

Defendants Adolfo Guzman, Jr., Juan Arementa Kelly and Antonio Perez, Jr. are charged with conspiring to knowingly and intentionally distribute and possess with intent to distribute 500 grams or more of methamphetamine and knowingly and intentionally possessing with intent to distribute 500 grams or more of methamphetamine.

Defendants move to suppress evidence seized from the search of an Apartment located at 320 Liliuokalani Avenue, Unit #601 in Honolulu, Hawaii. Defendants claim that the Search Warrant was not supported by probable cause.

1

The Affidavit in support of the Search Warrant establishes probable cause to search the Apartment.

Defendants' Motion to Suppress (ECF No. 73) is **DENIED.**


## PROCEDURAL HISTORY

On May 31, 2013, Honolulu Police Department Officer Scott Matsumura swore out an Affidavit in support of a Search Warrant for 320 Liliuokalani Avenue, Unit #601 in Honolulu, Hawaii. (Motion to Suppress Ex. A, Affidavit, ECF No. 73.)

On the same day, the Search Warrant was approved and executed. (Motion to Suppress Ex. A, Search Warrant, ECF No. 73.)

On June 6, 2013, a Complaint was filed against Defendants Adolfo Guzman, Jr., Juan Arementa Kelly, and Antonio Perez, Jr. (ECF No. 3.)

On June 13, 2013, a two-count Indictment was filed charging Defendant Guzman, Kelly, and Perez with Count 1: conspiring to knowingly and intentionally distribute and possess with intent to distribute 500 grams or more of methamphetamine, and Count 2: knowingly and intentionally possessing with intent to distribute 500 grams or more of methamphetamine. The Indictment also includes a Forfeiture Allegation, seeking the forfeiture of property including $102,000 in U.S. currency seized from the bedroom of 320 Liliuokalani Avenue, #601 in Honolulu, Hawaii

("the Apartment"), and $1,800 seized from Defendant Kelly's wallet at the time of his arrest. (Indictment, ECF No. 19.)

On October 3, 2013, Defendant Guzman filed a Motion to Suppress evidence seized from 320 Liliuiokalani Avenue, #601. (ECF No. 73.) The Court granted Defendant Kelly's and Defendant Perez's Motions for Joinder in the Motion to Suppress. (ECF Nos. 76 and 78.)

On October 17, 2013, the Government filed a Response. (ECF No. 81.)

On October 22, 2013, Defendants Guzman, Kelly, and Perez filed a Reply. (ECF No. 82.)

On October 23, 2013, the Court held a hearing on the Motion to Suppress. The Motion to Suppress was denied. (ECF No. 83.)


**BACKGROUND**


On May 31, 2013, Honolulu Police Department ("HPD") Officer Scott Matsumura swore out an Affidavit in support of a Search Warrant for 320 Liliuokalani Avenue, Unit #601 in Honolulu, Hawaii ("the Apartment"). (Motion to Suppress Ex. A, Affidavit, ECF No. 73.) In the Affidavit, HPD Officer Matsumura states that he is an HPD Officer with a federal cross-designation as a Drug Enforcement Administration ("DEA") Task Force Officer, who is part of the Hawaii Airport Drug Task Force at the Honolulu International Airport. The Affidavit sets forth HPD Officer

3

Matsumura's training and experience with drug trafficking in Hawaii. (Motion to Suppress Ex. A, Aff. at ¶¶ 1-3, ECF No. 73.)

HPD Officer Matsumura stated that the information in the Affidavit was based on his personal participation in the investigation and conversations with other DEA Agents and Task Force Officers. (Aff. at ¶ 3.) According to the Affidavit:

- On or about May 31, 2013, San Diego DEA Agents contacted Hawaii Airport Drug Task Force agents and officers ("Hawaii Agents") to inform them that a "known drug courier" ("drug courier"), who is under investigation by another law enforcement office, was traveling on a flight to Honolulu. The San Diego DEA Agents believed the drug courier was carrying narcotics. The San Diego DEA Agents supplied a description and photo identification of the drug courier to the Hawaii Agents. (Aff. at ¶ 13.)

- At approximately 1:20 p.m., on the same day, the Hawaii Agents observed the drug courier exit the flight from San Diego and walk to the baggage claim. After exiting the baggage claim, the Hawaii Agents observed that the drug courier carrying a backpack, a small carry-on bag, and one suitcase. (Aff. ¶ at 14.)

- The Hawaii Agents observed the drug courier travel by taxi directly to a Hotel in Waikiki. (Aff. at ¶ 15.)

4

- The Hawaii Agents observed the drug courier transport all of his luggage into the elevator and travel up to the fifth floor. Hawaii Agents determined that the drug courier was staying in Room #501. (Aff. at ¶ 16.)

- The Hawaii Agents observed the drug courier return to the Hotel Lobby and meet with two males. One of the males was later identified at Defendant Antonio Perez, Jr. Defendant Perez arrived at the meeting with a backpack that appeared to be empty. (Aff. at ¶ 16.)

- The Hawaii Agents observed the known drug courier, Defendant Perez, and the third male go the fifth floor. (Aff. at ¶ 16.)

- At approximately 3:00 p.m. on the same day, the Hawaii Agents observed Defendant Perez return to the Hotel Lobby alone, carrying the same backpack. The Hawaii Agents observed that the backpack now appeared to be full. (Aff. at ¶ 17.)

- The Hawaii Agents continuously observed Defendant Perez as he left the Hotel and walked a few blocks to an Apartment Building at 320 Liliuokalani Avenue in Waikiki. Defendant Perez carried the backpack the entire time. (Aff. at ¶ 18.)

- The Hawaii Agents were informed by the resident manager of the Apartment Building that Defendant Perez resided

5

in Unit 601 of the Apartment Building at 320
Liliuokalani Avenue. The resident manager led the
Hawaii Agents to Unit 601. (Aff. at ¶ 19.)

- The Hawaii Agents knocked on the door of Unit 601 ("the
Apartment") and Defendant Perez opened the door. (Aff.
at ¶ 19.) At that time, the Hawaii Agents smelled
marijuana and saw a bong in plain view. (Aff. at ¶ 20.)

- The Hawaii Agents identified themselves and asked
Defendant Perez to step outside. They asked Defendant
Perez if anyone else was inside Unit 601. Defendant
Perez said "no." The Hawaii Agents then asked for
anyone else inside the Apartment to exit. After a short
time, Defendant Adolfo Guzman, Jr. and Defendant Juan
Arementa Kelly exited the Apartment. All three
Defendants were identified and detained. The Apartment
was secured in anticipation of a Search Warrant. (Aff.
at ¶ 20.)

- HPD Officer Matsumura, the Affiant, stated that he
believed there is probable cause to believe that
controlled substances and other indicia of drug
trafficking would be found at the Apartment, 320
Liliuokalani Avenue, Unit 601. (Aff. at ¶¶ 11, 21.)

The Search Warrant was approved and executed on the day the
Affidavit was sworn, May 31, 2013.  Drug related evidence,

6

including eighteen pounds of methamphetamine and approximately $102,000, was seized from the Apartment during the execution of the Search Warrant.

Defendants Guzman, Kelly, and Perez were arrested and charged with drug related crimes.

Defendants move to suppress the evidence seized from the Search of the Apartment. Defendants claim that the Affidavit did not establish probable cause.

## STANDARD FOR ISSUING A WARRANT

The Fourth Amendment of the United States Constitution provides that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized." U.S. Const. amend. IV.

"Probable cause exists when, considering the totality of the circumstances, the affidavit shows that there is a 'fair probability that contraband or evidence of a crime will be found in a particular place.'" United States v. Fernandez, 388 F.3d 1199, 1252 (9th Cir. 2004)(quoting United States v. Ocampo, 937 F.2d 485, 490 (9th Cir. 1991)).  The Court of Appeals for the Ninth Circuit has explained the Illinois v. Gates' "fair probability" standard, as follows:

7

> For probable cause to exist, a magistrate need not
> determine that the evidence sought is *in fact* on the
> premises to be searched, or that the evidence is more
> likely than not to be found where the search takes
> place. The magistrate need only conclude that it would
> be reasonable to seek the evidence in the place
> indicated in the affidavit.

Fernandez, 388 F.3d at 1254 (citation omitted).

Under the totality of the circumstances test, otherwise innocent behavior may be indicative of criminality when viewed in context. United States v. Chavez-Miranda, 306 F.3d 973, 978 (9th Cir. 2002) (citing Ocampo, 937 F.2d at 490 (9th Cir. 1991)).

A magistrate judge may draw reasonable inferences about where evidence of a crime is likely to be found, based on the type of evidence and offense. Fernandez, 388 F.3d at 1253. The Ninth Circuit Appellate Court has held that it is reasonable for a magistrate judge to draw the inference that evidence of drug trafficking is likely to be found where a drug dealer lives. United States v. Fannin, 817 F.2d 1379, 1382 (9th Cir. 1987). An affiant's training and experience may also be relevant to determining if probable cause exists. United States v. Ventresca, 380 U.S. 102, 108-11 (1965)(citing United States v. Gil, 58 F.3d 1414, 1418 (9th Cir. 1995)); Fannin, 817 F.2d at 1381-82 (9th Cir. 1987).

An affiant must recite underlying facts so that the issuing judge can draw his or her own reasonable inferences and conclusions. Probable cause cannot rely solely on conclusory

8

statements, unsupported by the underlying facts. <u>Ventresca</u>, 380 U.S. at 108-11 (1965).

A court reviewing the issuance of a warrant is "limited to the information and circumstances contained within the four corners of the underlying affidavit." <u>United States v. Bertrand</u>, 926 F.2d 838, 841 (9th Cir. 1991) (citations omitted).  In conducting its review, the court looks at "whether the magistrate had a substantial basis to conclude that the warrant was supported by probable cause." <u>Fernandez</u>, 388 F.3d at 1252 (citing <u>United States v. Celestine</u>, 324 F.3d 1095, 1100 (9th Cir. 2003)(further citation omitted)).

"[T]he magistrate judge's determination should be paid great deference." <u>United States v. Gourde</u>, 440 F.3d 1065, 1069 (9th Cir.), <u>cert.</u> <u>denied</u> 127 S.Ct. 578 (2006)(citations and quotations omitted). In "borderline cases, preference will be accorded to warrants and to the decision of the magistrate issuing it." <u>United States v. Terry</u>, 911 F.2d 272, 275 (9th Cir. 1990) (citation omitted).

**ANALYSIS**

I.   **THE SEARCH WARRANT IS SUPPORTED BY PROBABLE CAUSE**

    A.   **The Affidavit Contains Sufficient Information to Allow the Magistrate Judge to Conclude that Probable Cause Exists to Search the Apartment**

The Magistrate Judge had a substantial basis for concluding that the Affidavit established probable cause to support the issuance of the Search Warrant for 320 Liliuokuolani Avenue, Unit 601, in Honolulu, Hawaii ("the Apartment").

The Affidavit states that, on May 31, 2013, San Diego DEA Agents informed the Hawaii Airport Drug Task Force agents and officers ("Hawaii Agents") that a known drug courier ("drug courier") was flying to Honolulu. The San Diego DEA Agents believed the courier was carrying narcotics. The information from the San Diego DEA Agents initiated a common investigation, in which the Hawaii Agents observed the drug courier's activity, beginning from when he disembarked from the plane from San Diego at 1:20 p.m. on the same day the Hawaii Agents received the information.

According to the Affidavit, the Hawaii Agents observed the courier go directly from the airport to a Hotel in Waikiki, carrying a small backpack, a suitcase, and a carry-on suitcase. The Hawaii Agents determined that the courier was renting Hotel

10

Room 501. The courier was observed taking his entire luggage into the Hotel's elevator and going to his room. (Aff. at ¶¶ 14-16.)

Shortly thereafter, the Hawaii Agents observed the drug courier return to the Hotel Lobby and meet with Defendant Antonio Perez, Jr. and another man. Defendant Perez's backpack appeared empty to the Hawaii Agents who were conducting surveillance. Defendant Perez, the drug courier, and the other man were observed entering the elevator and taking it to the fifth floor of the Hotel. At approximately 3:00 p.m., less than two hours after the drug courier's arrival in Honolulu, the Hawaii Agents observed Defendant Perez return to the Hotel Lobby alone. Defendant Perez's backpack appeared to be full. (Aff. at ¶¶ 16-17.)

The observations of the Hawaii Agents, viewed along with the information from the San Diego DEA Agents, reasonably supports the inference that Defendant Perez received drugs from the drug courier, and was carrying the narcotics in his backpack.

The Hawaii Agents continuously observed Defendant Perez, as he departed the Hotel and walked to an Apartment Building a few blocks away, located at 320 Liliuokalani Avenue. (Aff. at ¶ 18.) The resident manager of the Apartment Building informed the Hawaii Agents that Defendant Perez resided in Unit 601. (Aff. at ¶ 19.)

The Hawaii Agents conducted a knock-and-announce at Unit 601 ("the Apartment"). When Defendant Perez opened the door, the Hawaii Agents smelled marijuana and saw a bong in plain view. (Aff. at ¶ 20.) Defendant Perez stepped outside of the Apartment. When questioned by the Hawaii Agents, Defendant Perez told the Hawaii Agents that there were no other people in the Apartment. In fact, however, Adolfo Guzman, Jr. and Juan Arementa Kelly were inside. The two revealed their presence after the Hawaii Agents repeatedly asked loudly for anyone inside the Apartment to exit.

The observations of drug-related activity at the Apartment and Defendant Perez's lie about the presence of Defendants Guzman and Kelly further supports the inference that Defendant Perez was involved in a drug related enterprise.

The Affidavit states that, based on the HPD Officer Matsumura's ("the Affiant") training and expertise as an officer with the Hawaii Airport Drug Task Force, the observations of the Hawaii Agents and information from the San Diego DEA Agents establish probable cause to search Unit 601 of 320 Liliuokalani Avenue ("the Apartment") for evidence of drug-related activity. The Affiant, in stating his experience with at least 75 airport-related drug investigations and familiarity with practices used to smuggle narcotics, specifically methamphetamine, from the mainland, established a connection between his expertise and how

it bears on the facts of the affidavit. (Aff. at ¶¶ 1-11.) The Affiant's training and experience is a factor that can be considered in the probable cause determination. United States v. Cervantes, 703 F.3d 1135, 1139 (9th Cir. 2012).

It is reasonable to infer that any contraband that Defendant Perez received from the drug courier would be located in the Apartment. It is also reasonable to infer that that evidence of drug trafficking would be found at the Apartment, as it is the residence of Defendant Perez, who the Hawaii Agents believed to be involved in drug trafficking. United States v. Fannin, 817 F.2d 1379, 1382 (9th Cir. 1987)(evidence is likely to be found whre drug dealers live).

The Affidavit, as a whole, demonstrates the reasonableness of the Magistrate Judge's conclusion that probable cause exists to search 320 Liliuokalana Avenue, Unit 601 in Honolulu, Hawaii. Viewing the totality of the circumstances, the Affidavit establishes a fair probability that controlled substances or evidence of drug trafficking would be found at the Apartment.

### B.   The Information Received from the San Diego Agents Supports the Finding of Probable Cause

Defendants contend that the information from the San Diego DEA Agents, that a known drug courier was carrying narcotics on a flight to Honolulu, cannot be considered in the probable cause determination. Defendants claim that the information must be

13

ignored in the probable cause determination, as the Affidavit does not provide the factual basis for the San Diego DEA Agents' information.

### 1.    Reliability of Information Received From Other Law Enforcement Officers

A magistrate judge is charged with making a "practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." United States v. Stanert, 762 F.2d 775, 778-79 (9th Cir. 1995) (citing Gates, 462 U.S. at 238).

Hearsay statements may be used to establish probable cause, when there is a substantial basis for crediting the hearsay. United States v. Castillo, 866 F.2d 1071, 1077 (9th Cir. 1983); United States v. Guerrero, 756 F.2d 1342, 1348-49 (9th Cir. 1984), cert. denied, 469 U.S. 934 (1984).

Observations of other law enforcement officers engaged in a common investigation are generally a reliable basis for a warrant. United States v. Ventresca, 380 U.S. 102, 111 (1965); United States v. Kunkler, 679 F.2d 187, 190 (9th Cir. 1982)("Police officers are considered reliable and their

14

reliability need not be independently demonstrated."); United States v. Spears, 965 F.2d 262, 277 (7th Cir. 1992)(holding that a magistrate could regard an affiant's fellow law enforcement officer as reliable sources); United States v. Lapsins, 570 F.3d 758, 764 (6th Cir. 2009)(same). Information may also be entitled to increased credibility when police independently corroborate the information or when an informant has provided accurate information in the past. United States v. Angulo-Lopez, 791 F.2d 1394, 1396-97 (9th Cir. 1986).

An affidavit based on solely on conclusory statements, even those from fellow officers, is insufficient to establish probable cause for a search warrant. United States v. Cervantes, 703 F.3d 1135, 1139 (9th Cir. 2012); United States v. Underwood, 725 F.3d 1076 (9th Cir. 2013). Recitation of some of the underlying circumstances is essential to allow the magistrate judge to perform an independent evaluation, and not serve as a mere rubber stamp. Ventresca, 380 U.S. at 109; Cervantes,703 F.3d at 1139 (opinions without foundational facts are entitled to minimal weight in the probable cause analysis).

A magistrate judge should consider conclusory statements in an affidavit in the context of the other facts provided to determine if they help establish probable cause.  United States v. Angulo-Lopez, 791 F.2d 1394, 1396-97 (9th Cir. 1986) (conclusory statements need not be independently evaluated).

15

Evidence bearing on the reliability of an informant and the basis for the knowledge is considered together with other relevant evidence in determining if probable cause exits, based on the totality of the circumstances. Id.  Such an approach is consistent with the United State's "central teaching" on the probable cause standard, that affidavits should be interpreted in a commensense, rather than a hypertechnical, manner. Gates, 462 U.S. at 230-31; Ventresca, 380 U.S. at 109.

Courts have found a sufficient basis for a finding of probable cause based on the personal knowledge of the affiant and information furnished by fellow officers engaged in a common investigation. United States v. Steed, 465 F.2d 1310, 1315 (9th Cir. 1972); United States v. Approximately $15,630.00 in U.S. Currency, No. 07-452, 2007 WL 2669998 (E.D. Cal. Sept. 7, 2007)(probable cause was demonstrated by observations of the affiant's fellow officers and information obtained from the affiant's surveillance).

Conclusions of other law enforcement officers that are provided without a factual basis may assist in establishing probable cause, when viewed in the totality of the circumstances. United States v. Lapsins, 570 F.3d at 761-64. In Lapsins, the Sixth Circuit Court of Appeals upheld the validity of a search warrant based on probable cause to believe that a defendant possessed actual child pornography, and not virtually created

16

images of children. The affidavit, written by a federal agent, stated that a state police officer obtained a pornographic image that was sent by the defendant, while he was investigating a separate instance of child pornography. The state police officer sent the image to a national clearinghouse that gathers information about sexually exploited children for law enforcement use. The clearinghouse concluded that the child in the image was a known victim who was identifiable by a Belgian police officer. The clearinghouse also provided a report that the defendant's IP address had uploaded 132 child pornographic images. Lapsins, 570 F.3d at 761-64.

The Sixth Circuit Appellate Court held that the Belgian police officer's statement establishing that the image was of a known victim, was presumptively reliable, even though the affidavit did not include information about the Belgian police officer's reliability or factual basis for the conclusion. The Appellate Court explained that law enforcement officers are generally considered reliable, without any special showing. The Appellate Court considered that the reliability of the Belgian police officer's identification of the victim may be lessened, as it came from the clearinghouse, instead of directly from the officer. The Appellate Court, however, held that it need not determine the exact measure of the officer's reliability, as the officer's identification of the victim, in combination with the

17

other information presented in the affidavit, such as the implication that the local officer believed the photo depicted a real child, provided sufficient probable cause to believe that the defendant possessed pornographic images of real children. Lapsins, 570 F.3d at 764-66.

The Affidavit here contained sufficient facts to allow the Magistrate Judge to independently evaluate the existence of probable cause, based on the information communicated by the San Diego DEA Agents, the subsequent observations by the Hawaii Agents, and the Affiant's opinions, based on his training and experience.

The information from the San Diego DEA Agents, that a known drug courier was believed to be carrying narcotics on a flight to Honolulu, is presumptively reliable, as it is communication received from a fellow law enforcement agency in a common investigation. The Affidavit states that the San Diego DEA Agents also provided the Hawaii Agents with the drug courier's description and photo identification, and informed the Hawaii Agents that the drug courier is currently under investigation by another law enforcement office in a state other than Hawaii. (Aff. at ¶ 13.)

The fact that the courier is currently under investigation and the San Diego DEA Agents' production of the photo identification further strengthens the inference of the

reliability and basis of knowledge for the San Diego DEA Agents. The information from the DEA Agents was further corroborated by the drug courier's arrival on the flight to Honolulu, as predicted by the San Diego DEA Agents.

The information from the DEA Agents is only one piece of information, amongst many, that viewed together allowed the Magistrate Judge to independently determine that there was probable cause to search Defendant Perez's Apartment. The Hawaii Agents' surveillance of the drug courier, upon his arrival in Honolulu, and the subsequent surveillance of Defendant Perez, supports the inference that Defendant Perez received narcotics from the drug courier and brought the narcotics back to his Apartment at 320 Liliuokalani Avenue in Honolulu, HI.

The totality of the circumstances establish probable cause to search Defendant Perez's Apartment.


## 2.    Defendants Misstate the Government's Position

Defendants claim, in their Reply, that the Government has conceded that the information from the San Diego DEA Agents cannot be considered in the probable cause analysis. (ECF No. 82.)

The Government has made no such representation. The Government properly stated that the totality of the

circumstances, including the information from the San Diego DEA Agents and the observations of the Hawaii Agents, established probable cause for the issuance of the Search Warrant. (Opp. at pg. 12, ECF No. 81.)

### 3.    Defendants' Allegation of Falsity Lacks Support

At the hearing on the Motion to Suppress, Defense Counsel for the first time, alleged that the statement about the known drug courier was false or recklessly placed in the Affidavit, because there were no facts included as to the basis of the allegation. Defense Counsel also alleged, for the first time, that the Affidavit omitted important information about the length of the wait for the Search Warrant.

Defendants have not set forth a sufficient basis for the allegations, even if they had been properly raised. A challenge to an affidavit based on its inclusion of false information or a material omission requires a defendant to make a "substantial preliminary showing" of the alleged misrepresentations. Franks v. Delaware, 438 U.S. 154 (1978).

The allegations, if an attempt to raise a Franks issue, were not properly raised in Defendants' Filings. Local Rule 7.4; Donna S. v. Hawaii, CV. 12-00069 JMS, 2012 WL 4017449 (D. Haw. Sept. 12, 2012)("The court will not address arguments raised for the first time in a Reply, much less at a hearing.")

The Ninth Circuit Court of Appeals has identified five requirements that a defendant must satisfy to establish an entitlement to an evidentiary hearing on the issue:

> (1) the defendant must allege specifically which portions of the warrant affidavit are claimed to be false; (2) the defendant must contend that the false statements or omissions were deliberately or recklessly made; (3) a detailed offer of proof, including affidavits, must accompany the allegations; (4) the veracity of only the affiant must be challenged; and (5) the challenged statements must be necessary to find probable cause.

United States v. DiCesare, 765 F.2d 890, 894-895 (9th Cir. 1985).

Defendants have not provided sufficient support for their challenge of the Affidavit based on its alleged inclusion of materially false statements or omissions. Defendants' challenge is denied.


C.    The Circumstances of Underwood Are Distinguishable

Defendants rely on the case of United States v. Underwood, 725 F.3d 1076 (9th Cir. 2013) to support the claim that the Affidavit does not establish probable cause to search the Apartment.

In Underwood, a defendant challenged a state search warrant for his residence. Four-and-a-half pages of the affidavit were copied "nearly verbatim" from an affidavit supporting a related federal search warrant. The copied portion of the affidavit stated that the defendant was a courier for a "multihundred

21

thousand pill drug trafficking organization," and that three months earlier, agents observed the defendant deliver two crates to known co-conspirators that the agent believed contained approximately 260,000 pills of MDMA. Underwood, 725 F.3d at 1079. The state affiant's only personal observation in the affidavit was that, during a protective sweep of the defendant's home, he saw a zip-lock bag containing what appeared to be marijuana. Id. at 1080.

The state affidavit did not provide a basis for the belief that the crates contained 260,000 pills of MDMA, or any other factual basis for connecting defendant or his residence to MDMA drug trafficking. Underwood, 725 F.3d at 1079-80.

The copied information included numerous opinion statements. It was unclear whether the opinions and beliefs expressed in the four-and-a-half pages of information learned from the federal agent were intended to express the beliefs of the state affiant or the federal agent who provided the information. The state affidavit also failed to provide any connection between the general opinions about the behavior of drug traffickers and the defendant, who was described in the affidavit as a drug courier. Underwood, 725 F.3d at 1079.

The copied information was also incomplete and some parts were difficult to decipher. The affidavit stated that the officers "intercepted conversations over TT#1-4, #6-7" which led

22

the officer to believe that certain practices were being used to traffic MDMA. The state affidavit did not provide the details of the intercepted conversations or explain the meaning of "TT#1-4, #6-7." The federal affidavit, from which the information was copied, explains tht "TT" is an abbreviation for "Target Telephones" and provides the suspected co-conspirator who used each number. Underwood, 725 F.3d at 1080.

The Ninth Circuit Court of Appeals held that the state search warrant was not supported by probable cause, as the affidavit included only two facts: (1) a baggie of a personal use amount of marijuana was observed in the defendant's home and (2) three months earlier, agents observed the defendant deliver two crates to known drug traffickers. Nothing indicated that the crates contained ecstasy, or that there was ecstasy at the defendant's home, or that defendant was otherwise involved in drug trafficking. The Appellate Court held that the affidavit was a "bare-bones" affidavit, containing solely "foundationless expert opinion and conclusory allegations." Underwood, 725 F.3d at 1083.

The search warrant in Underwood suffered from numerous flaws that are not present in Search Warrant for the Apartment at 320 Liliuokalani Avenue, Unit 601.

The information in the Underwood affidavit did not provide any indication that evidence related to the trafficking of MDMA

23

would be found at the defendant's residence. Underwood, 725 F.3d at 1084. The defendant's interaction with suspected drug traffickers had occurred three months earlier. The information in the affidavit did not present any facts to support the inference that defendant had knowledge of what was in the crates. Even if the affidavit established that the defendant knew the crates contained drugs, the affidavit did not support the inference that any drugs would be found at the defendant's residence. Underwood, 725 F.3d at 1086 ("*no accompanying facts* in the affidavit to support the inference" that drugs would be found or that the defendant had knowledge of the drugs)(emphasis added).

Here, the Affidavit is based on events that occurred on the day the Search Warrant was sworn to and was executed. Hawaii Agents had reason to believe Defendant Perez had received narcotics for distribution from a known drug courier and, as the Hawaii Agents observed, carried those drugs to his Apartment. The Affidavit established a direct connection between the evidence of drug trafficking and Defendant Perez's Apartment.

The affidavit in Underwood also suffered from infirmities arising from the fact that part of the state affidavit has been copied from the federal affidavit. The copied portion created confusion as to the source of certain beliefs and conclusions. The copied portion was also incomplete. Material factual details and explanations of certain uncommon abbreviations that appeared

24

in the copied portion were included in the federal affidavit, but omitted from the state affidavit. Underwood, 725 F.3d at 1080. The state affidavit did not establish how the federal agent or state affiant's training and experience related to the facts to establish probable cause to search.

Here, the Affidavit is internally consistent and complete. HPD Officer Matsumura clearly states that the beliefs contained in the Affidavit are based on his own training and experience and that he relied on information provided by the San Diego DEA Agents, the Hawaii Agents, and his personal participation in the investigation. (Aff. at ¶ 3.) HPD Officer's Matsumura's Affidavit explained his involvement in at least 75 airport-related drug investigations involving the smuggling of drugs through airports, and his familiarity with the practices employed to smuggle drugs. (Aff. at ¶ 2.) HPD Officer Matsumura also stated that methamphetamine is often sent to Hawaii from the west coast of the mainland, including California. (Aff. at ¶ 7.)

The circumstances of the protective sweep of the defendant's residence in Underwood also differs from the circumstances here. In Underwood, the protective sweep of the defendant's residence revealed only a small zip-lock bag of marijuana. The defendant refused to consent to a full search, and the state search warrant was obtained.  The defendant's actions at his residence did not add to the finding of probable cause in Underwood.

Here, the circumstances as Defendant Perez's Apartment assisted in establishing probable cause. At Defendant Perez's Apartment, the Hawaii Agents smelled marijuana and saw a bong. Defendant Perez then lied to the Hawaii Agents, by stating that on one else was present in the apartment. The active use of marijuana and false statement, in addition to the fact that the Hawaii Agents had reason to believe Defendant Perez had transported a backpack of narcotics to his Apartment, is distinguishable from Underwood.

The Search Warrant for Defendant Perez's Apartment at 320 Liliuokalani Avenue, Unit #601 does not suffer from the infirmities present in Underwood. The tip from the San Diego DEA Agents, in conjunction with the Hawaii Agents' observations of and interaction with Defendant Perez, establish probable cause to search Defendant Perez's Apartment.


The Affidavit, on its face, establishes probable cause to search the Apartment. Defendants' Motion to Suppress (ECF No. 73) is **DENIED.**


## II.  GOOD FAITH EXCEPTION

Evidence obtained in violation of the Fourth Amendment is subject to exclusion from a criminal trial, unless some exception

applies. See Gates, 462 U.S. at 238. The good faith exception to the exclusionary rule applies when law enforcement officers reasonably rely on a search warrant issued by a detached neutral magistrate judge that is later found invalid. United States v. Leon, 468 U.S. 897, 919-20 (1984). All circumstances surrounding the warrant, not just the four corners of the affidavit, can be considered in determining if an officer acted in objectively reasonable reliance. The burden of demonstrating good faith rests on the government. Underwood, 725 F.3d at 1085.

An affidavit lacking probable cause cannot be saved by the good faith exception when an affiant recklessly or knowingly places false information in the affidavit that misleads the issuing judge or where the warrant is so facially deficient that executing officers cannot reasonably presume it to be valid. Leon, 468 U.S. at 922-23.

The good faith exception is also unavailable if an affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," a "bare bones" affidavit. Leon, 468 U.S. at 923. A "bare bones" affidavit is one that would not create disagreement among thoughtful and competent judges as to the existence of probable cause. Id. at 926. The good faith exception is also unavailable where where the judge wholly abandons his judicial role, such as when an affidavit does not include sufficient facts to allow the Magistrate Judge to

27

independently evaluate the existence of probable cause. Id. at 922-23.

There is no indication that HPD Officer Matsumura recklessly or knowingly placed false information in the affidavit that misled the Magistrate Judge or that the Magistrate Judge abandoned his judicial role. The Affidavit includes sufficient facts to allow the Magistrate Judge to sufficiently evaluate whether probable cause exists. The facts presented establish, at a minimum, a colorable basis for the existence of probable cause to search the Apartment.

The good faith exception would apply, even if the Affidavit did not establish probable cause.

//

//

//

//

//

//

//

//

//

//

//

## CONCLUSION

The Search Warrant is supported by probable cause.

Defendant Adolfo Guzman, Jr.'s Motion to Suppress (ECF No. 73), joined by Defendants Juan Arementa Kelly and Antonio Perez, Jr., is **DENIED**.


IT IS SO ORDERED.

DATED: November 15, 2013 , Honolulu, Hawaii.




      /s/ Helen Gillmor

      Helen Gillmor
      United States District Judge


---

United States v. Adolfo Guzman, Jr., Juan Arementa Kelly, and Antonio Perez, Jr.; Crim. No. 13-00565 HG; **ORDER DENYING DEFENDANTS (01) ADOLF GUZMAN, JR., (02) JUAN AREMENTA KELLY, AND (03) ANTONIO PEREZ, JR.'S MOTION TO SUPPRESS (ECF No. 73)**